```
               IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF ALABAMA
                         SOUTHERN DIVISION


ROCHELLE C. RIVIERE,              :
                                  :
     Plaintiff,                   :
                                  :
vs.                               :
                                  :     CIVIL ACTION 14-0401-M
CAROLYN W. COLVIN,                :
Social Security Commissioner,     :
                                  :
     Defendant.                   :
```

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. § 405((g), Plaintiff seeks judicial review of an adverse social security ruling denying a claim for disability insurance benefits (Docs. 1, 10).  The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 16).  Oral argument was waived in this action (Doc. 15).  After considering the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th

1

Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Substantial evidence requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Plaintiff was forty-four years old, had completed a tenth-grade education (Tr. 29), and had previous work experience as a school crossing guard and shoe store manager (Tr. 29-30, 42).  Riviere alleges disability due to fibromyalgia, bursitis, and migraines (Doc. 10 Fact Sheet).

The Plaintiff applied for disability benefits on September 7, 2011, alleging an onset date of August 26, 2011 (Tr. 98-101; *see also* Tr. 14).  An Administrative Law Judge (ALJ) denied benefits, determining that Riviere was capable of performing her past relevant work as a school crossing guard (Tr. 13-21). Plaintiff requested review of the hearing decision (Tr. 7), but the Appeals Council denied it (Tr. 1-5).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence.  Specifically, Riviere alleges that:  (1) The ALJ did not properly consider the opinions of her treating physicians; (2) the ALJ's residual

2

functional capacity (hereinafter *RFC*) is not supported by the evidence; and (3) the ALJ improperly found that her testimony of pain and limitation was not credible (Doc. 10).  Defendant has responded to—and denies—these claims (Doc. 11).  The Court will summarize the relevant evidence of record.[1]

On January 10, 2011, Dr. Timothy Peter Ahmadi examined Riviere for moderate to severe back pain, radiating into the left leg; he further noted cervical spine pain, surmising that "most likely she had lumbar disc disease with nerve root compression" (Tr. 175; *see generally* Tr. 165-84).  X-rays of the lumbar spine were normal, providing no evidence of spondylolysis or spondylolisthesis (Tr. 184).  On January 27, Plaintiff had low grade lumbar back pain for which she was given a Decadron injection[2] (Tr. 172).  On February 7, an MRI of the lumbar spine was performed that was normal except for some nonspecific mass at L2, suspected to be a hemangioma of clinical insignificance (Tr. 176-78).  A week later, Dr. Ahmadi diagnosed acute sinusitis but prescribed an antibiotic for back pain (Tr. 171).  On April 19, 2011, Riviere had multiple complaints of pain all over along with intermittent diarrhea and vomiting; the Doctor

---

[1]As Plaintiff alleges a disability onset date of August 26, 2011 (Tr. 100), the Court will not report the medical history that pre-dates 2011.

[2]**Error! Main Document Only.***Decadron* is a corticosteroid used for, among other things, the treatment of rheumatic disorders.  *Physician's Desk Reference* 1635-38 (52nd ed. 1998).

concluded she had irritable bowel syndrome and, possibly, fibromyalgia for which he prescribed Elavil[3] and something for her stomach (Tr. 170).  On June 14, Ahmadi noted no pain complaints, but diagnosed acute rhinitis and sinusitis, prescribing Tramadol[4] (Tr. 169); four days later, Darvocet[5] was prescribed for moderate to severe cervical spine pain (Tr. 167).  On June 30, the Doctor noted muscle tenderness, diagnosed possible fibromyalgia, and gave her some Cymbalta[6] samples (Tr. 165).  On July 18, Riviere complained of pain in the back, lower leg, and upper extremity, though there was no gross abnormality in any joint; Ultram[7] was prescribed (Tr. 166).

On August 18, 2011, Rheumatologist Gino DiVittorio examined Plaintiff, noting complaints of pain all over, but mainly in the neck, shoulders, and mid- and lower back; he noted fifteen wide spread tender points, with a symptoms score of eight, though all

---

[3]**Error! Main Document Only.***Amitriptyline*, marketed as *Elavil*, is used to treat the symptoms of depression.  *Physician's Desk Reference* 3163 (52nd ed. 1998).

[4]*Tramadol* "is indicated for the management of moderate to moderately severe chronic pain in adults who require around-the-clock treatment of their pain for an extended period of time." **Error! Main Document Only.***Physician's Desk Reference* 2520 (66th ed. 2012).

[5]**Error! Main Document Only.**Propoxyphene napsylate, more commonly known as Darvocet, is a class four narcotic used "for the relief of mild to moderate pain" and commonly causes dizziness and sedation. *Physician's Desk Reference* 1443-44 (52nd ed. 1998).

[6]Cymbalta is used in the treatment of major depressive disorder. **Error! Main Document Only.***Physician's Desk Reference* 1791-93 (62nd ed. 2008).

[7]**Error! Main Document Only.***Ultram* is an analgesic "indicated for the management of moderate to moderately severe pain."  *Physician's Desk Reference* 2218 (54th ed. 2000).

4

joints were normal (Tr. 188-89, 215).  The Doctor noted that this met the diagnostic criteria for fibromyalgia; Riviere was encouraged to exercise regularly, avoid caffeine and alcohol, and take Lyrica.[8]  On September 15, 2011, Plaintiff complained of hurting all over and admitted that she had not been exercising; DiVittorio noted mild widespread tender points, pain at palpation in the ischial bursas, but no leg edema and substituted Ultracet[9] for Ultram (Tr. 186).  On October 13, Dr. DiVittorio noted tender points in Plaintiff's upper and lower back, causing pain; her morning Lyrica made her sleepy though she slept poorly (Tr. 205).  Riviere admitted she was not exercising.  On November 10, Plaintiff reported that she was exercising, hurting very little, but her sleeping was only fair; the Rheumatologist noted minimal tender points, no leg edema, and recommended exercise (Tr. 204).  On February 10, 2012, Plaintiff reported hurting "some" all over and not sleeping well; she was not exercising (Tr. 213).  DiVittorio recommended exercise and prescribed Savella.[10]

On February 23, Doctor Ahmadi reported Plaintiff's claim of

---

[8]*Lyrica* manages neuropathic pain.  **Error! Main Document Only.***Physician's Desk Reference* 2517 (62nd ed. 2008).

[9]**Error! Main Document Only.***Ultracet* is made up of acetaminophen and tramadol and is used for the short-term (5 days or less) management of pain.  *See* http://health.yahoo.com/drug/d04766A1#d04766a1-whatis

[10]*Savella* is a drug enhancing transmission in neurotransmitters to ease pain, reduce fatigue, and help memory.  http://www.webmd.com/ fibromyalgia/guide/savella-for-fibromyalgia-treatment

5

inability to "do constant or persistent work because of [her] pain," though noting no cardiopulmonary symptoms, shortness of breath, tenderness, or edema (Tr. 206). On March 27, 2012, Ahmadi completed a physical capacities evaluation (hereinafter *PCE*), indicating that Riviere could sit for an hour at a time, but a total of less than an hour during an eight-hour day; she could stand/walk for an hour at a time and total a day (Tr. 208). She could lift only up to ten pounds occasionally and carry five pounds frequently; capable of simple grasping and arm controls, Riviere had no fine manipulation and could not use leg controls. Plaintiff could never bend, squat, crawl, climb, or reach and was totally prohibited from activities involving unprotected heights, moving machinery, exposure to dust, fumes, and gases or marked changes in temperature and humidity; she could not drive. Also on March 27, Ahmadi found Plaintiff's pain so frequent as to be intractable and virtually incapacitating; because of her medications, she was unable to function productively at work (Tr. 209). On April 27, Riviere reported doing reasonably well "except for pain in several areas due to fibromyalgia;" he noted no abnormalities and prescribed Xanax[11] (Tr. 207).

A month earlier, on March 22, 2012, Dr. DiVittorio reported

---

[11]**Error! Main Document Only.***Xanax* is a class four narcotic used for the management of anxiety disorders. *Physician's Desk Reference* 2294 (52nd ed. 1998).

6

that Plaintiff hurt "some" but, overall, felt better with exercise and sleep; she had mild tender points in her back (Tr. 212). The Doctor recommended that Riviere "do more exercises" (Tr. 212). On May 3, 2012, Plaintiff said she had quit taking Savella because it disturbed her sleep; she hurt some, with no edema (Tr. 210). She had mild, widespread tender points; Ultram and exercise were prescribed. On August 10, following an otherwise normal exam, Dr. Vittorio ordered an anesthetic injection in the left hip for bursitis; he recommended exercise and added Cymbalta (Tr. 219-20, 223-24). Two weeks later, the Rheumatologist reported that he had told Riviere that she needed to exercise regularly and avoid alcohol and caffeine; he prescribed Lyrica (Tr. 225). On September 7, Dr. DiVittorio stated there were "no more options. She can not afford or tolerate medications. She is not exercising. Injections don't help. There is no [sic] much else I can offer" (Tr. 222). Though she had "widespread tender points," Plaintiff was "not adherent to her medication regimen and [] denied medication side effects" (Tr. 217).

On November 8, 2012, Riviere told Dr. Ahmadi that she had some pain but it was better; the exam was normal (Tr. 233; *see generally* Tr. 223-33). On December 17, she was treated for a cold and sinusitis; he reported no edema or calf tenderness (Tr. 232). A month later, the exam was normal but for sinus problems

7

(Tr. 231). On February 2, 2013, Dr. Ahmadi noted her diagnosis and medications, and stated that except for congestion she was medically stable (Tr. 230). On March 27, 2013, he noted that other than her diagnoses and medications, she was doing well. On April 8, Ahmadi noted lower back and leg pain, but she was otherwise "medically stable;" he prescribed Neurontin[12] (Tr. 227). In a note the next day, the Doctor noted that Riviere had returned the next day because her medications had not worked; "[s]he had pain all over and was under care of a rheumatologist and did not do any good" (Tr. 226).

This concludes the Court's summary of the evidence.

Plaintiff first claims that the ALJ did not properly consider the opinions of her treating physicians. Specifically, Riviere asserts that the reports of Drs. Ahmadi and DiVittorio were not properly considered (Doc. 10, pp. 10-16). It should be noted that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[13] *see also* 20 C.F.R. § 404.1527 (2014).

---

[12]**Error! Main Document Only.** *Neurontin* is used to help with seizures. *Physician's Desk Reference* 2110-13 (52nd ed. 1998).

[13]The Eleventh Circuit, in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

8

Riviere claims that the ALJ failed "to state what weight, if any, was afforded to the opinions of Dr. DiVittorio" (Doc. 10, p. 14) while the Government argues that the ALJ specifically discounted them (Doc. 11, p. 6). The Court finds that Plaintiff is more correct in her argument, but it is of no moment.

The Court can re-summarize the records quickly. On August 18, 2011, DiVittorio found that Riviere had fifteen widespread tender points, mainly in the neck, shoulders, and mid- and lower back, that met the criteria for a diagnosis of fibromyalgia (Tr. 188-89); this was eight days before Plaintiff's asserted onset date. On November 10, Plaintiff reported to Dr. DiVittorio that she was exercising, hurting very little, but her sleeping was only fair; the Rheumatologist noted minimal tender points, no leg edema, and recommended exercise (Tr. 204). In a March 22, 2012 note, the Rheumatologist reported that Plaintiff hurt "some" but, overall, felt better with exercise and sleep; she had mild tender points in her back (Tr. 212). The August 10 exam was normal except for left hip bursitis (Tr. 219-20, 223-24). On September 7, Dr. DiVittorio's records indicate that he was releasing her from his care because she did not exercise or take her medications as ordered (Tr. 217, 222). The Court emphasizes that the Doctor released Riviere because she did not follow prescribed treatment, so there was nothing he could do for her. Though the ALJ has not clearly defined the weight

9

given Dr. Vittorio's opinions, the Court finds that they do not support a finding of disability.

The ALJ clearly defined his views on Dr. Ahmadi's conclusions, giving little weight to the PCE and pain forms he completed "because the documents contain insufficient rationale with no citation to medical evidence that would reasonably support the opinions" (Tr. 18). The ALJ went on to note that the opinions in those forms were inconsistent with treatment records and his physical exams (Tr. 18).

The Court finds substantial support for this conclusion. Nowhere in Dr. Ahmadi's treatment notes is there any objective indication of limitation. While the Doctor repeated Riviere's claims of pain in his treatment notes, he never limits her in any way; most of his exams made after he completed the PCE and pain forms were essentially normal.

The Court finds substantial support for the ALJ's conclusion that Dr. Ahmadi's opinions were to be given little weight. While the ALJ did not state what weight he gave Dr. DiVittorio's opinion, it was, at most, harmless error,[14] as the Doctor's treatment notes do not counsel a finding of disability.

Riviere next claims that the ALJ's RFC is not supported by the evidence (Doc. 10, pp. 16-19). The Court notes that the ALJ

---

[14]**Error! Main Document Only.**As such, remand of this action would be inappropriate. *See Reeves v. Heckler*, 734 F.2d 519, 526 n.3 (11th Cir. 1984).

is responsible for determining a claimant's RFC.  20 C.F.R. § 404.1546 (2013).  That decision can not be based on "sit and squirm" jurisprudence.  *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984).

In his determination, the ALJ found that Plaintiff had the RFC "to perform light work as defined in 20 C.F.R. 404.1567(b)[15] except [that] she is unable to climb ladders, ropes, or scaffolds.  She can occasionally crouch" (Tr. 16).  As noted previously, the ALJ discounted Dr. Ahmadi's opinions in reaching this decision; the Court found substantial support for that decision.  The ALJ also discounted Riviere's own statements of pain and limitation (Tr. 18, 19-20); the Court will soon address Plaintiff's claim that this decision was improper.

The Court finds substantial support for the ALJ's determination of Plaintiff's RFC.  The medical evidence in this action is scant.  Although Dr. DiVittorio provided the best medical evidence of disability—and that fell short of proof—he quit treating Plaintiff because she failed to comply with his

---

[15] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."

treatment regimen.  Dr. Ahmadi's treatment notes failed to show any limitations as they rely on Plaintiff's subjective complaints of pain; his notes regularly indicate a normal exam except for Riviere's assertions.  Plaintiff is reminded that the social security regulations state that Plaintiff is responsible for providing evidence from which the ALJ can make an RFC determination.  20 C.F.R. § 404.1545(a)(3).

Plaintiff's final claim is that the ALJ improperly found that her testimony of pain and limitation was not credible (Doc. 10, pp. 18, 19-20).  The standard by which the Riviere's complaints of pain are to be evaluated requires "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain."  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)).  The Eleventh Circuit Court of Appeals has also held that the determination of whether objective medical impairments could reasonably be expected to produce the pain was a factual question to be made by the Secretary and, therefore, "subject only to limited review in the courts to ensure that the finding is supported by substantial evidence."  *Hand v. Heckler*, 761 F.2d 1545, 1549

12

(11th Cir.), *vacated for rehearing en banc*, 774 F.2d 428 (1985), *reinstated sub nom. Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986). Furthermore, the Social Security regulations specifically state the following:

> statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.

20 C.F.R. 404.1529(a) (2014).

The ALJ found that Riviere's pain and limitation were not as severe as alleged (Tr. 18). He based this conclusion on her limited use of pain medications and her failure to follow a prescribed medical regimen (Tr. 20). The ALJ further noted Plaintiff's daily activities (Tr. 19).

The Court finds substantial support for the ALJ's conclusion. First, the medical evidence does not support Riviere's claims of debilitating pain and limitation; the only evidence that would support those claims were the PCE and pain forms completed by Dr. Ahmadi, but those forms were correctly

13

accorded little weight.  Dr. DiVittorio's records, however, reveal both that Plaintiff was not suffering as much as she claimed and that she was not even doing the things she could to improve her situation.  Plaintiff is reminded that the Social Security regulations state that "[i]n order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work."  20 C.F.R. 1530(a)(2014).  The regulation goes on to state that "[i]f you do not follow the prescribed treatment without a good reason, we will not find you disabled or, if you are already receiving benefits, we will stop paying you benefits."  20 C.F.R. § 404.1530(b); *see also Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988).

Plaintiff has raised three different claims in bringing this action.  All are without merit.  Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Perales*, 402 U.S. at 401.  Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**.  Judgment will be entered by separate Order.

DONE this 17th day of March, 2015.

s/BERT W. MILLING, JR.

UNITED STATES MAGISTRATE JUDGE